IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Andre Mechelle English, | ) | C/A/ No.: 5:07-cv-00942-MBS |
| | ) | |
| Plaintiff, | ) | **AMENDED COMPLAINT** |
| | ) | |
| vs. | ) | |
| | ) | |
| South Carolina State University, Andrew Hugine, Jr., Maurice G. Washington, in their individual capacities, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The plaintiff, complaining of the defendants herein, would respectfully allege that:

1. The plaintiff is a citizen and resident of the County of Richland, State of South Carolina and the defendant South Carolina State University ("SCSU") is an institution of higher learning of the State of South Carolina.

2. The defendant Andrew Hugine, Jr. ("Hugine") is upon information and belief a citizen and resident of the County of Orangeburg, State of South Carolina and was the President of SCSU at all relevant times herein.

3. Defendant Maurice G. Washington ("Washington"), at all relevant times herein, was the Chairman of the Board of Trustees of SCSU.

4. All of the other defendants except for SCSU, Hugine and Washington were regular members of the Board at SCSU at all relevant times herein.

5. All of the individual defendants are sued in their official and individual capacities. All were acting under color of state law at all relevant times herein.

1

6. Plaintiff was hired by SCSU as its Vice-President for Institutional Advancement as well as Executive Director of the SCSU Foundation. Plaintiff later assumed the position of Executive Director of the SCSU Advancement Foundation.

7. SCSU Board Chairman, defendant Washington became aware in 2005 that defendant Hugine intervened in the process of a vendor (Sodexho) making a payment to SCSU and that Hugine requested that the vendor supply the check directly to him (defendant Hugine) instead of the SCSU Finance Office.

8. Upon his receipt of the vendor's payment in the amount of $200,000.00, defendant Hugine proceeded to take the payment to his home or another off campus facility and hold said funds, depriving SCSU of its benefits for nearly nine months.

9. It was only when the Chief Financial Officer of SCSU began an audit that the payment was discovered missing. At that point the Chief Financial Officer learned that the vendor had long since provided the payment to defendant Hugine. Defendant Hugine maintained possession of this check for months, thus depriving SCSU of these funds including a substantial amount of interest.

10. The plaintiff became involved in this situation after defendant Hugine repeatedly directed her to open a bank account on behalf of the SCSU Advancement Foundation.

11. The plaintiff, along with others, disclosed the improper handling of the $200,000.00 check to Chairman Washington.

12. The plaintiff met with defendant Washington to discuss the check in detail. In the third or fourth quarter of 2005, defendant Washington, SCSU Chief Financial Officer John

Smalls, Joyce Green and plaintiff met in Charleston over dinner to discuss the facts which had been uncovered regarding defendant Hugine and the check.

13. Although defendant Hugine did not endorse or negotiate the check, his intrusion into the vendor payment process was unethical and a breach of his fiduciary duty to SCSU. His conduct also gave the appearance of impropriety and represented a clear conflict of interest since the source of his 2005-2006 salary supplement payment in the amount of $70,000.00 was to come from these funds. The plaintiff brought the matter to the attention of SCSU, but she was ignored and later was retaliated against because of it.

14. It was well known that defendant Hugine's supplemental salary would come from the SCSU Advancement Foundation. A private attorney had issued an opinion advising SCSU Board, President and Staff that because the President would receive personal gain and benefit from the Advancement Foundation he must maintain distance and separation from the Foundation to avoid any conflict of interest.

15. Because defendant Washington failed to take appropriate steps when specifically informed of the vendor check matter involving defendant Hugine, defendant Washington and the SCSU Board created the sense that defendant Hugine was exempt from accountability to the SCSU Board and that he would be allowed to take whatever actions he deemed desirable even if those actions exposed SCSU to unnecessary and unreasonable liability and public scrutiny.

16. Defendant Washington and the Board of Trustees of SCSU were placed on notice in 2005 of defendant Hugine's lack of integrity and questionable decision making skills.

17. In February 2006, defendant Hugine deliberately concealed a relationship with a lobbyist to prevent the SCSU Board of Trustees and the general public from becoming aware of

this affiliation which, upon information and belief, was establish to influence the outcome of an April, 2006, Trustee election race.

18. In his official capacity, as the head of a state agency, defendant Hugine entered into a four month contract with a Charleston-based lobbyist. Defendant Hugine's concealment of this relationship represented a knowing violation of a South Carolina Ethics Commission requirement that a lobbyist affiliation be registered within 15 days of the inception of that relationship. The lobbyist relationship began in February 2006, and defendant Hugine failed to insure that the lobbyist was appropriately registered. Again, in this instance, defendant Washington was aware of the relationship and failed to require that defendant Hugine reveal and register the lobbyist association, which was required by law. This failure placed and places SCSU in jeopardy of receiving penalties and other sanctions.

19. Moreover, this unregistered lobbyist and defendant Washington co-sponsored a pre-game reception in Charleston, South Carolina on September 16, 2006.

20. Defendant Washington has permitted defendant Hugine to take actions against the plaintiff which were irrational and intended to harm the plaintiff.

21. The reasons for defendant Washington's and defendant Hugine's actions against the plaintiff were in part because of the plaintiff's recommendations to SCSU that it was inappropriate for the SCSU Foundation to lease automobiles for the Athletic Department coaches. Leasing private vehicles for the coaches for their own business and personal use represented a violation of Internal Revenue regulations because the value of the vehicles represents supplemental income to the employees and is taxable.

22. The plaintiff obtained two written legal opinions that if the SCSU Foundation proceeded as planned, it could be exposed not only for civil penalties but criminal penalties as well. These written opinions were provided to the defendants Hugine, Washington and others.

23. However, defendant Hugine became extremely angry and agitated when the plaintiff informed him of these legal opinions and provided him with her recommendations against going forward with the leasing of vehicles. As a result he retaliated against her.

24. For several months, defendant Hugine advocated the leasing of automobiles through the SCSU Foundation for the purpose of business and personal transportation to the coaching staff in connection with the SCSU athletic program.

25. Following the SCSU internal audit of the Athletic Department in April 2006, the plaintiff submitted a written legal opinion in May 2006 from a private attorney on the advisability of continued leasing of the vehicles through the SCSU Foundation for SCSU purposes. (In December 2005, the Foundation, as lessee, entered into a three-year lease on behalf of the Athletic Department.)

26. Copies of the legal opinion were emailed to defendant Hugine, University Counsel Ed Givens, Athletic Director Charlene Johnson and Head Football Coach Buddy Pough, on May 11, 2006.

27. In addition, the plaintiff had surveyed comparable public institutions and their institutionally-related foundations in South Carolina and learned that none took the approach SCSU was taking. Plaintiff learned that the reason Clemson University Foundation, University of South Carolina Foundations, Winthrop University Foundation, The Citadel Foundation, Francis Marion University Foundation and Coastal Carolina University Foundation, which were

surveyed, did not lease vehicles for their respective athletic programs were due to legal liabilities and tax consequences to a foundation's 501(c)3 status.

28. Only a few days after providing a legal opinion to defendant Hugine, the plaintiff was summoned to defendant Hugine's office where he expresses his dissatisfaction with the legal opinion.

29. The plaintiff therefore obtained a second more detailed written opinion which confirmed the first.

30. On October 6, 2006, the plaintiff received an opinion from SCSU general counsel Ed Givens that was favorable to SCSU but contradicted the opinions submitted by a private attorney.

31. On October 19, 2006, the plaintiff, as Executive Director of the SCSU Foundation, submitted a summary of the legal analysis and reasoning behind the Foundation's proposal to not to lease vehicles for SCSU's athletic program.

32. Five days later on October 24, 2006, defendant Hugine issued a memorandum to the plaintiff ordering her to raise $50,000.00 by December 31, 2006, to cover the cost of providing vehicles to the Athletic staff. The memorandum stated that, to the extent plaintiff was unsuccessful in raising these funds within the time frame allotted, that defendant Hugine would subject her to disciplinary action based on "insubordination." It was obvious that defendant Hugine actions was retaliatory because the plaintiff attempted to expose actions which could readily subject the SCSU Foundation to civil and criminal liabilities.

33. On October 30, 2006, the plaintiff was relieved of her duties as Vice-President for Institutional Advancement and transferred to the Athletics Department in a make-work position.

Thereafter, the term of her contract which had eight months remaining was reduced to four months.

34. The defendants continue to take actions which are in apparent violation of law and which will subject SCSU, a South Carolina State Agency, to civil and criminal liabilities. All of the individual defendants are sued in their individual and official capacities and all were acting under color of state law at all relevant times herein.

<b>FOR A FIRST CAUSE OF ACTION<br>(Violation of First Amendment Rights § 1983)<br>(All Defendants)</b>

35. The allegations contained in paragraph 1-34 are realleges herein as if repeated verbatim.

36. This action arises under of the First Amendment of the Constitution of The United States, 42 USC § 1983 and the laws and constitution of the State of South Carolina.

37. The plaintiff exercised her First Amendment right to free speech about a matter of public concern including public finances, criminal and civil matters regarding the $200,000.00 check aforementioned and the leasing of vehicles to the members of the SCSU Athletic Department.

38. The plaintiff spoke about and reported defendant Hugine's illegal activities regarding the $200,000.00 check as well as the improper leasing of vehicles to the Athletic Department which could subject the SCSU Foundation to civil and criminal liability.

39. The defendant Hugine, while acting under the color and pretext of his authority as President of SCSU, and in his official and individual capacities demoted, transferred and

terminated the plaintiff because she reported matters of public concern to him and defendant Washington and others.

40. The defendant Hugine's conduct constitutes a violation of the plaintiff's First Amendment rights to free speech and resulted in plaintiff's transfer and ultimate premature termination.

41. The defendant Washington, while acting under the color and pretext of his authority as Chairman of the Board of SCSU, and in his official and individual capacity, failed to protect the plaintiff and effectively joined in and caused her transfer, demotion and termination because she reported the aforementioned matters of public concern.

42. Upon information and belief the remaining individual members of the SCSU Board, while acting under the color and pretext of their authority as Board members, and in their official and individual capacities, allowed and or joined in the transfer, demotion and termination of the plaintiff because she dared to report matters of public concern.

43. The defendants actions against the plaintiff were maliciously made with the intent to harm the plaintiff.

44. As a direct and proximate result of the defendant's violation of the plaintiff's First Amendment right to free speech, plaintiff lost her position with the defendant SCSU and have lost income and benefits which would continue and increase in the future, she has been deprived of her liberties and freedom, incurred pain and suffering, emotional distress, damage to her reputation and other damages.

45. Plaintiff is entitled to reinstatement if practical.

46. Plaintiff is entitled to actual damages, reasonable attorney's fees and costs from all defendants herein.

47. Plaintiff is also entitled to punitive damages from the individual defendants herein.

**FOR A SECOND CAUSE OF ACTION**
**(Whistle Blower Act 8-27-10 et seq as to the Defendant SCSU only)**

48. The allegations contained in paragraph 1-47 are realleges herein as if repeated verbatim.

49. The plaintiff reported illegal activities by defendant Hugine which resulted in the plaintiff's transfer and demotion although her income remained the same.

50. The plaintiff reported the illegal activities aforementioned in writing to defendant Washington and defendant Hugine.

51. Later the defendant terminated contract from SCSU with the plaintiff because she had reported the aforementioned illegal activities.

52. The actions of defendant SCSU represent a violation of the South Carolina Whistle Blower Act.

53. The plaintiff has met all prerequisites of the act and has been harmed as a result thereof.

54. The direct and proximate result of defendant's actions, plaintiff was demoted and has suffered economic losses as well as pain and suffering and emotional distress.

55. Plaintiff is entitled to actual damages from defendant SCSU as well as reasonable attorney's fees and costs.

56. Plaintiff is also entitled to equitable including reinstatement and all other remedies to which she may be entitled under the aforementioned statue.

## FOR A THIRD CAUSE OF ACTION
### (Civil Conspiracy)
### (as to Andrew Hugine, Jr. And Maurice G. Washington in their individual capacities)

57. The allegations contained in paragraph 1-56 are realleges herein as if repeated verbatim.

58. During the relevant time period aforementioned the defendants Hugine and Washington, acting in their individual capacities, for personal and malicious reasons determined to target, scapegoat and punish the plaintiff for no legitimate or proper reasons and met, schemed, planned and conspired to cause her harm.

59. Such actions constitute a civil conspiracy which continued until the forced termination of the plaintiff and approximately resulted in extreme and permanent damages for the plaintiff both in her personal and professional life.

60. Said individual defendants acted maliciously and deliberately and with intent to cause the plaintiff harm. Their actions were taken with absolute bad faith and without the presence of any legitimate motivation whatsoever.

61. As a direct and proximate result of the civil conspiracy by the individual defendants that is set forth hereinabove, the plaintiff has been demoted and transferred and thereafter her contract was terminated prematurely and not renewed; she has been branded as an incompetent administrator, sustained a loss of earnings and loss of future earnings as well as embarrassment, humiliation, mental anguish, emotional distress all of which will continue into the future. Plaintiff is entitled to an award of punitive damages as well as actual damages from the

individual defendants for their intentional, malicious and bad faith actions in this executing their conspiracy against the plaintiff.

**WHEREFORE**, plaintiff prays for a trial by jury, reinstatement if practical, actual damages including back pay, front pay and all compensatory damages as alleged hereinabove, from all defendants including but not limited to pain and suffering, emotional distress, damage to her reputation, all economical damages, punitive damages against the individual defendants and such legal and equitable relief in which the plaintiff may be entitled under the aforementioned common law and statutes.

**CROMER & MABRY**

BY:   s/Benjamin M .Mabry
         Benjamin M. Mabry (#3250)
         1225 Pickens Street
         Post Office Box 11675
         Columbia, South Carolina 29211
         Phone  803-799-9530
         Fax     803-239-0210
Attorneys for Plaintiff

May 30, 2007